### NETTIE W. HUNT *vs.* BENJAMIN F. POOLE.

Plymouth.    Oct. 21, 22, 1884. — May 11, 1885.    COLBURN, J., absent.

A delivery by a wife to her husband of a check payable to the order of a third person does not necessarily constitute the husband the agent of the wife to receive the amount of the check.

A husband having a check in his possession, which had been delivered to him by his wife, and which was signed by her and was payable to the order of a third person, said to this person that the wife had given it to him (the husband) and he wanted it cashed. The third person gave the husband the amount of the check, and collected the money from the bank. *Held*, in an action by the wife against the third person, for money had and received, that the statement of the husband was not evidence against the wife, either that the check was a gift to the husband, or that he was authorized to receive the proceeds of it.

CONTRACT for money had and received. The declaration alleged that, on December 19, 1882, the defendant received to the plaintiff's use $1424.14. The answer was a general denial, and that, on December 19, 1882, the defendant received from Charles E. Hunt, the plaintiff's husband, a check drawn by the plaintiff, payable to the order of the defendant, upon the Attleborough National Bank, for $1424.14, and gave to Charles E. Hunt a receipt for the same, payable to his order, and on December 28 he paid the same to the order of said Hunt.

Trial in the Superior Court, before *Gardner*, J., who allowed a bill of exceptions, in substance as follows :

It was in evidence, that the plaintiff, on December 18, 1882, made and signed a check on the Attleborough Bank for $1424.14, payable to the order of the defendant, and on the same day delivered it to her husband, Charles E. Hunt; that the check came into the hands of the defendant, and he collected the money on it.

The plaintiff testified, in substance, that she was the widow of Charles E. Hunt, who died in April, 1883; that she signed this check to draw the money out of the bank so as to get interest on it; that her object was to have the check go to the defendant; that on December 31, 1882, she went to the defendant's house and asked him if he had got the money, and he said he

had the check, but did not have the money, and that he knew it was her check; and that she never knew what he did with the money collected on the check.

William H. Bates, father of the plaintiff, testified that, on January 1, 1883, at the request of his daughter, he went to the defendant, and asked him whether he had received the check; that the defendant said, "Yes," that he had "drawn the money," that he had "received it for her accommodation," and that "they" had the money, but refused to say who "they" were. This witness also testified: "I said, 'Do you acknowledge that you have money belonging to my daughter?' he said, 'Yes.'" The witness also testified to making a demand upon the defendant to pay the money to his daughter.

The defendant testified that he was a brother-in-law of the plaintiff's husband; that the check was given him by Reuben Hunt, his father-in-law, who said that Charles gave him the check, that his wife gave it to him, and that Charles wanted it cashed; that the witness, on December 19, gave him a receipt for it, as follows: "Received of C. E. Hunt $1424.14, which I promise to pay on demand;" that, on December 20, he deposited the check, and that, on December 28, Reuben Hunt brought the receipt and order, and the witness gave his own check for the money to him; that, on December 31, the plaintiff asked him if he had received the money on the check; that he answered that he supposed they had got the money on it, as he had given a check for it; that, on January 1, Bates asked him if he had received a check from the plaintiff; that he, witness, answered, "I suppose I have;" and that Bates "demanded I should go and get it from those I had paid it to, and pay it over to him, and said he would give me two days to pay it. I said I cashed that check in good faith, and if I was going to get into trouble by so doing I should stop." On cross-examination, the witness testified: "The plaintiff did not ask me for the money, she asked me who had got the money now. I said I had given a check for it. I did not tell her to whom I had given the check, nor to whom I had paid the money."

Reuben Hunt testified that Charles E. Hunt, his son, on December 19, gave the witness the check, and told him to take it to the defendant and get a receipt for it. "I gave it to Poole,

and said Charley wanted to get the money on that check, and wanted a receipt for it. The defendant said, 'All right,' and wrote his receipt. I received it from the defendant."

It further appeared, from evidence introduced by the defendant, that, on December 26, 1882, Charles E. Hunt indorsed the receipt to Reuben Hunt, who presented it to the defendant for payment, on December 28, 1882; that the defendant took it up and gave to Reuben Hunt a check on the Abington National Bank for the amount, which check Reuben Hunt presented at said bank, and received payment thereof, on December 30, 1882, and on the same day delivered the money so received to Charles E. Hunt, taking his receipt therefor.

It appeared in evidence, that the plaintiff and her husband, at the time the check was signed by her, were living together as man and wife at Rockland, in the house of Reuben Hunt, at which time her husband was sick with consumption and unable to leave the house; that the defendant kept a store opposite her residence; that at the time there was on deposit in her name, in said Attleborough Bank, the amount for which the check was drawn; that she had lent her husband, for use in his business, $3000; that the first deposit of the said $1424.14 made in said bank in her name was of $700, money not expended by her husband out of the $3000 lent by her to him; that the balance in said bank in her name was made up of various sums repaid to her by her husband from time to time out of the proceeds of his business, which was carried on in his own name; that several times she had drawn checks on said bank on said deposit, payable to the order of persons to whom her husband was indebted in his said business, as loans to him, which said checks were given to her by her husband; and that said checks reduced the amount of the deposit in said bank to the sum of $1424.14.

The first and only time the plaintiff had seen or spoken to the defendant, in relation to the check drawn by her payable to his order, was on December 31, 1882, when she called at his residence, as above stated. On the day following, January 1, 1883, the father of the plaintiff called upon the defendant and demanded payment of the check. It appeared in evidence that she had no knowledge of the transaction between her husband,

Reuben Hunt, and the defendant, in relation to said check, receipt, and order, and there was no evidence that the plaintiff ever authorized the defendant to give his check to Reuben Hunt for said sum, or ever authorized the defendant to pay said money to any person.

The defendant requested the judge to rule as follows : " 1. If the money sued for, or any part thereof, was money earned by the husband of the plaintiff in his business, and had become mixed by the plaintiff with money belonging to her, so that the amount thereof cannot be ascertained, she is not entitled to recover.   2. If the money for which the check was drawn was the separate property of the wife, and she gave the check to her husband, then, in the absence of other evidence, it and the proceeds thereof became the property of the husband, and he could use it as his own.   3. If the money was hers, and the check and proceeds thereof were not given to him for his own disposal, and the check was given by the plaintiff to the husband without notice to the defendant, then the husband was the agent of the wife to collect the check, and if the defendant paid the amount of the check to the husband before notice or demand, he is not responsible to the plaintiff.   4. If the wife made the check payable to the defendant's order, and gave it to her husband without any notice or special instruction to the defendant to deliver the proceeds thereof to her alone, and on her personal receipt, and he had no notice that the money was the separate estate of the wife, or that her husband was not authorized to receive it, and the plaintiff and the husband were living together as man and wife, then payment of the check to the husband would discharge the defendant's liability for the money to the plaintiff. 5. If the defendant paid the check to the plaintiff's husband, to whom the plaintiff had given it, or upon his order, in good faith, before notice from the plaintiff that it was her separate property, or that her husband was not authorized to receive it, he is not liable to the plaintiff."

The judge gave the first, fourth, and fifth rulings as requested; to the second, the judge added: " If the word 'gave' means 'gave as a gift,' then I give the ruling as prayed for.   If the word 'gave' means no more than 'delivered,' then I refuse to give it."   The third ruling requested was refused.

The judge also gave the following rulings not asked for by the defendant : " 1. The mere delivery by the plaintiff to her husband of a check upon funds which were the separate property of the plaintiff, deposited by her, in her own name, in a bank, which check was made by the plaintiff payable to the defendant or his order, would not alone show that the check and the proceeds thereof became thereby the property of the husband, and that he could use them as his own. 2. The mere delivery of such a check by the plaintiff to her husband would not empower him to collect and receive the proceeds of said check from the defendant as the plaintiff's agent. 3. If the money in the bank was the separate property of the plaintiff, and the defendant had notice of it, and the defendant received the check from the plaintiff's husband, and collected the money thereon, and paid over the same to the order of the husband, such payment would not discharge the defendant from liability to the plaintiff, unless he should show, by a fair preponderance of evidence, that the plaintiff had authorized her husband so to receive it or dispose of it, or had so treated and dealt with him in reference to the management of her separate estate as to hold him out to third persons as her agent in that behalf."

The judge found for the plaintiff ; and to the refusal to give the rulings as prayed for, and to the last three rulings given, the defendant alleged exceptions.

*A. Hemenway*, ( *C. M. Perry* with him,) for the defendant.

*R. O. Harris*, (*B. W. Harris* with him,) for the plaintiff.

FIELD, J. The court gave the first, fourth, and fifth rulings requested. It also gave the second, with an explanation of its meaning which was plainly required ; if it did not have this meaning, it was rightly refused. The remaining exceptions are to the refusal to give the third ruling requested, and to the three rulings given. That the delivery of the check by the wife to the husband would not necessarily constitute the husband her agent in fact to collect or receive the amount of it from the defendant, or show that this check and its proceeds actually became the property of the husband, is evident. Such a delivery is consistent with many other hypotheses, and it might have been accompanied with express directions not to collect the check or appropriate the proceeds. The more difficult question is

whether the defendant was justified in receiving the check, and paying the amount of it to the husband, or to his order, from the fact that the plaintiff delivered the check to her husband to be delivered to the defendant. The defendant testified that the plaintiff's check was given him by Reuben Hunt, his father-in-law; " who said Charles gave him the check, that his wife gave it to him, and that Charles wanted it cashed." The case may, however, be considered as if Charles E. Hunt, the husband, had himself presented the check to the defendant, and had said to the defendant that his wife had given it to him, and that he wanted it cashed; and the defendant, having no knowledge that this statement was not true, but believing it to be true, received the plaintiff's check, deposited it to his own credit in a bank, and paid to Charles the amount of it. The statement of Charles, that his wife had given it to him, is not evidence against the plaintiff of any such gift, and his assertion of authority to receive the proceeds of the check, if any was made, is not evidence that he had such authority.

The argument is, that, the plaintiff's check being rightfully in the hands of her husband for the purpose of delivering it to the defendant to be collected by him, the defendant was justified in inferring from the form of the check, and its presentation to him by the husband, that the wife had given to the husband authority to receive the amount of the check from the defendant, or, to use the language of the exceptions, authority to get it cashed. The form of the check indicated that the plaintiff intended that the First National Bank of Attleborough should pay to the defendant a certain amount of money and charge the same to her account. It did not indicate that any of this money was to be paid to the plaintiff's husband. It did not indicate the purpose for which the plaintiff desired the money paid to the defendant. If it was not intended as a gift to the defendant, the defendant must hold the money when received to the use of the plaintiff. If the defendant held it for the plaintiff, his duty was to pay it to her or to her order. As there is nothing in the check itself which orders the defendant to pay the proceeds of it to the husband, and as the statement of the husband that the check had been given him, or that he had authority to receive the proceeds of it, is not evidence against the plaintiff

of any such gift or authority, the single question is whether the employment of the husband by the plaintiff to deliver the check to the defendant was a representation or holding out by the plaintiff to the defendant that her husband had authority to receive the proceeds of it. We think that it was not, and that the only representation that can be inferred from the form of the transaction was that the plaintiff authorized the delivery of the check to the defendant to be drawn by him, which was the authority given in fact. Such a delivery to the defendant might have been intended by the plaintiff for many purposes, and possession by the husband that he might so deliver it was equally consistent with an intended gift to the defendant, or an intended deposit of money with the defendant for the convenience and use of the plaintiff. The husband was the special agent of the plaintiff to deliver the check to the defendant, and was held out by his employment only as such special agent; if he assumed any authority beyond this, it was the defendant's duty to ascertain that he possessed it. A majority of the court are of opinion that the                   *Exceptions must be overruled.*